**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-26269-CIV-MARTINEZ**

FRANK VARELA BERNARDINO,

Petitioner,

v.

MIAMI FEDERAL DETENTION
CENTER, *Warden*, *et al.*,

Respondents.
_________________________________/

**ORDER DENYING PETITION**

**THIS CAUSE** comes before the Court on Petitioner Frank Varela Bernardino's *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") [ECF No. 1]. Petitioner challenges his detention at the Miami Federal Detention Center ("FDC"), arguing that his continued detention is unlawful and that Respondents improperly revoked his Order of Supervision. Petitioner seeks immediate release. (*See generally id.*). In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents to show cause why the Petition should not be granted. (September 15, 2026 Order [ECF No. 8]). Respondents filed their Response to the Court's show cause Order on September 18, 2026 (the "Response") [ECF No. 9]. The Court has considered the Petition, the Response, the record, and applicable law. For the following reasons, the Petition is **DENIED**.

## I. BACKGROUND

Petitioner is a native and citizen of Cuba who entered the United States in September 1997. (Resp. 1). From May 2007 to June 2016, Petitioner accumulated a long list of criminal convictions, including several felony convictions. (*Id.* 2–3). On April 25, 2012, an Immigration Judge issued

an Order of Removal against Petitioner. ([ECF No. 9-4] ¶ 13). In May 2012, Petitioner was detained by Enforcement and Removal Operations ("ERO"). (Resp. 3). On August 27, 2012, Petitioner was released on an Order of Supervision ("OSUP"). ([ECF No. 9-4]). Sometime in June 2026, Petitioner was arrested on criminal traffic charges in Miami-Dade County. ([ECF No. 9-2] ¶ 19). On June 15, 2026 ERO issued an arrest warrant and a Warning for Failure to Depart for Petitioner. ([ECF No. 9-5]). On July 18, 2026 Petitioner, who was being held at Turner Guilford Knight Correctional Center Petitioner for the June 2026 criminal charges, was transferred to the custody of ERO. (Resp. 4). That same day, ERO issued Petitioner with a Notice of Revocation of Release, (*id.*), informing him that his OSUP was thereby revoked. (*See* OSUP Revocation [ECF No. 9-8]). Petitioner also received an informal interview on July 18. ([ECF No. 9-2] ¶ 23). When asked for a response, Petitioner declined to provide a written statement. (*Id.*). On August 3, ERO issued Petitioner with a Notice of File Custody Review and a new Warning for Failure to Depart. (*Id.* ¶ 24). On August 5 and August 10, ERO issued a Notice of Removal to a Third Country, informing Petitioner of ERO's intention to remove him to Mexico. (*Id.* ¶ 26). On both occasions, Petitioner refused to sign the notice. (*Id.*). Petitioner remains detained at FDC. (*Id.* ¶ 27).

Petitioner filed the Petition on September 10, 2026, asking the Court to declare his detention unlawful and order his immediate release. (Pet. 1). He argues the revocation of his Order of Supervision was unlawful. (*Id.*). Petitioner further argues that his current detention is a violation of his Fifth Amendment Due Process rights. (*Id.*).

In their Response, Respondents argue "Petitioner is subject to a final order of removal and is being lawfully detained" under 8 U.S.C. § 1231(a)(6)." (Resp. 6). They note Petitioner had been detained for less than six months when he filed the Petition, which is "an insufficient amount of

time to state a claim" for unlawfully prolonged detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Resp. 5–7).

## II. ANALYSIS

Detention of noncitizens who have been ordered removed is mandatory. *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."); *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90–day removal period, however, aliens must be held in custody."). The same is true for noncitizens who are "deportable by reason of having committed any offense covered in" § 1227(a)(2)(B). *See* 8 U.S.C. § 1226(c)(1)(B) (noting that ICE "shall take into custody" those "criminal" noncitizens). Petitioner was ordered removed in April 2012, and that removal order became administratively final immediately because he waived his right to appeal it. (*See* [ECF 91]); *Riley v. Bondi*, 606 U.S. 259, 267 (2025); 8 U.S.C. § 1101(47)(B)(ii). Petitioner was found removable based on his numerous criminal convictions up to April 2012, including a cocaine trafficking conviction, which is an offense covered in § 1227(a)(2)(B). (*See* [ECF No. 9-2]); 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . is deportable."). *See* 8 U.S.C. §§ 1226(c)(1)(B), 1231(a)(2)(A).

Even liberally construed, it is unclear if the Petition contains an argument that Petitioner's detention is unconstitutional under *Zadvydas*. To the extent that Petitioner does raise a *Zadvydas* claim, Respondents are correct that such a claim is premature. The Supreme Court has recognized that the presumptively reasonable period of detention for noncitizens subject to a final order of removal is six months. *See Zadvydas*, 533 U.S. at 701. The Eleventh Circuit, for its part, has further explained that "to state a claim under *Zadvydas* the alien not only must show post-removal order

detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Petitioner provided no such evidence.

Petitioner argues that Respondents improperly revoked his Order of Supervision. The Court disagrees. Noncitizens released pursuant to an order of supervision are governed by 8 C.F.R. § 241.4. *See* 8 C.F.R. § 241.5(a). That regulation sets out the steps Respondents must take to revoke orders of supervision, including that the noncitizen "be notified of the reasons for revocation" and "be afforded an initial informal interview promptly after his" redetention to allow him "an opportunity to respond to the reasons for revocation stated in the notification." *See* 8 C.F.R. § 241.4(l)(1). Petitioner received the required Notice of Revocation and informal interview. (*See* Notice [ECF No. 9-7]).

The Court rejects Petitioner's assertion that the notice of revocation is based on inaccurate facts. The notice accurately states that ERO was revoking Petitioner's OSUP due to his June 2026 criminal charges. (*See* [ECF No. 9-7] 1). In addition to the Notice of Revocation, Petitioner also received a Warning for Failure to Depart and a Notice of File Custody Review. ([ECF No. 9-2]). The Court therefore finds that Petitioner was afforded all required process. *See Tawil v. Cardinal*, No. 26-CV-22521, 2026 WL 2198539, at *6 (S.D. Fla. July 30, 2026).

Finally, Petitioner's argument that Respondents have violated Petitioner's Due Process Rights under the Fifth Amendment fails. Detention during and immediately following removal proceedings is entirely constitutional. *See Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690–91. Petitioner has not made any specific allegations about which procedural protections he did not receive during his removal proceedings.

Accordingly, the Court does not find that Petitioner's current detention violates the Fifth Amendment.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, [ECF No. 1], is **DENIED**.
2. The Clerk is **DIRECTED** to mail a copy of this Order to Petitioner.
3. The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 24 day of November 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc: all counsel of record
Petitioner, *pro se*